I .TOBIAS, J.,
DISSENTS IN PART AND ASSIGNS REASONS.
I respectfully dissent in part.
I fully understand the need of the association to have a means to assure that recalcitrant members of the association pay their assessments timely in order to assure that the association can meet its contractual obligations (such as maintenance expenses for common areas). Late fees and the compounding of them in some manner is an appropriate method of policing the actions of the membership. However, the association failed to proceed in accordance with the act creating and granting it certain powers.
*714 Article VII of the Act of Restrictions of 22 April 1987 set the initial “member’s regular dues and/or assessments” at $180.00 per quarter per lot, authorized the membership to change the dues/assessments by a two-thirds vote of the total membership, and permitted the board of directors of the association “from time-to-time to change the then current regular dues and/or assessments by ten (10%) percent in any twelve (12) month period.” The restrictions are a contract and the law between the parties.
At the 23 August 1995 meeting of the board of directors it was proposed
that we assess a 10% late fee on the 15th of the second month of the Quarter (assessed each quarter). Effective 2nd Quarter 95 (Dec. 95). Property owners will be made aware of this at next annual meeting. Motion was made pto approve the 10% late fee which was approved, seconded and carried.
I find nothing in the record on appeal that establishes that the membership was ever informed, considered, or ratified the board’s resolution. Further, even assuming that the membership was made aware-of the late fee and that proper notice was given, I find nothing in the record on appeal addressing the compounding that the association did in this case.
Although the board could have increased on a regular basis (not more than 10% in a 12-month period) in a uniform manner the per lot assessment, I find nothing that permits the association to impose a late fee or permits the compounding that the majority by its opinion ratifies. The minutes of the 14 December 1999 membership meeting contain a somewhat vague and ambiguous reference to the issue at hand; in pertinent part, the minutes state:
Amendment to add the following statement to Article VIII-B: “Further failure to pay any dues or assessments shall also result in loss of all voting rights, whether in person or by proxy, and prohibition of attendance at all EPOA meetings until required assessments are paid.”
Presently after 3 quarters past due property is subject to a lien according to Article VII of the Act of Restrictions.
At the request of Eastover residents, a list of past due assessments and the action taken was provided at the meeting.
Failure to pay dues/assessments shall also result in loss of all voting rights and prohibition of attendance at EPOA meetings until everything is current.
EPOA owners paying in protest — “no such thing” as per Sherman Copelin. Pay when due or pay penalty.
But the language does not affirmatively indicate that the late fee and compounding was authorized by the membership.
The board of directors could have uniformly increased the per lot fee by 10% each year, which it apparently in fact did not do; the board, however, apparently did in fact increase the per lot fee over the years (but not every year), which they had the contractual authority to do. But without a favorable vote ofj^two-thirds of the membership, the association and board could not impose a late fee or authorize the compounding.
Additionally, neither La. R.S. 9:1141.1 et seq. (the Louisiana Homeowners Association Act) nor La. R.S. 9:1145 through 1148 (relative to a homeowners association’s privilege/lien for nonpayment of charges, expenses, or dues) address late penalties or the compounding issue.
I therefore find the amount of the judgment should be reduced, and I would ac *715 cordingly remand for a recalculation of the amount due by the appellants.